UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES PIPE AND FOUNDRY COMPANY, ) ) ) *Plaintiff*, ) ) v. ) UNITED STEELWORKERS OF AMERICA ) and UNITED STEEL WORKERS OF ) AMERICA, LOCAL 3508 ) ) *Defendants.* ) | Case No. 1:05-CV-329 Chief Judge Collier |

## **M E M O R A N D U M**

Before the Court are Plaintiff United States Pipe and Foundry Company's (the "Company") Motion for Summary Judgment (Court File. No. 17) and Defendants United Steel Workers of American and United Steel Workers of America, Local 3508's (collectively, the "Union") Motion for Partial Summary Judgment (Court File No. 14). The Company seeks summary judgment asking the Court to vacate and set aside the industrial arbitration award at issue and dismiss the Union's counterclaim. The Union seeks partial summary judgment asking the Court to enforce the arbitrator's award. This matter arises under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), as it involves rights under an agreement between an employer and a labor union. For the following reasons, the Court will **DENY** the Company's Motion for Summary Judgment and will **DENY** the Union's Motion for Partial Summary Judgment because the issues before the Court are moot.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

The Company is an Alabama Corporation which owned and operated a Valve and Fittings Plant in Chattanooga, Tennessee until its closure in 2006. The Company has since sold the plant to a third party real estate group. (Court File No. 30, Ex. 2). The third party real estate group plans to remove all machinery and transform the land into a mixed use development (*id*.). The Union is a labor organization that was the authorized bargaining representative for the Company's Chattanooga Valve and Fittings Plant. The Company and the Union have been parties to collective bargaining agreements during all relevant periods relating to this dispute. The collective bargaining agreement (the "Agreement") governed the relationship between the parties. The Agreement authorized the Company to "manage its plant" including the right to hire and discharge employees for just cause unless otherwise limited by the Agreement (Court File No. 12, Ex. 5).

William Patterson worked as a truck driver at the plant and was a member of the bargaining unit (Court File No. 30, Ex. 2). In September 2004, the Company moved Patterson from a truck-driver position to another position inside the plant (*id*.). The Union claimed the Company allowed outside contractors to perform truck driving work after Patterson was moved (*id*.). The Union filed a grievance on September 23, 2004, under the procedures laid out in the Agreement, claiming the Company violated Articles I, V-A, VI-C-5 and XVII-4-D by allowing outside contractors to perform Patterson's previous job (*id*.). The grievance was denied and thereafter the grievance was submitted to arbitration under the procedure specified in the Agreement (Court File No. 7). When the Company denied the grievance, it stated the grievance "deals with the Company employing outside contractors . . . [and] there are no contractual restrictions in regard to the use of sub-contractors." (Court File No. 12, Ex. 5).

Charles Hall ("Hall") was selected as the arbitrator under procedures outlined in the Agreement and a hearing was conducted by Hall on July 21, 2005 (Court File No. 12, Ex. 2). At the time of the arbitration hearing, Patterson was employed on a full-time basis and earned the same hourly wage as he did while working in the truck-driver position (*id.*).

On September 29, 2005, Hall issued his decision and award (the "Decision") (Court File No. 12, Ex. 2). The Decision stated the issue to be determined was whether the Company "[e]ngaged in contracting out bargaining work in violation of the collective bargaining contract." (*id.*). The Decision found it was "clear that Article I [of the Agreement], Recognition identifies the work in question as work provided by bargaining unit employees by identifying the job classification of truck driver." (*id.*). The Decision went on to say that if "an employer were allowed to bring into the plant outside contractors to provide the work of bargaining unit employees then the Union would eventually cease to exist." (*id.*). In the award section of the Decision, Hall stated the "Company shall cease and desist assigning outside contractors to perform bargaining unit work" and "[g]rievant [Patterson] shall be restored to his previous position of truck driver and made whole for any loss of pay or other emoluments of office." (*id.*).

On November 23, 2005, the Company filed suit in this Court asking the Court to vacate and set aside the Decision, relieve the Company from all obligations under the Decision and to determine no violation occurred under the Agreement (Court File No. 1). From information furnished by the parties, the Court became concerned the issues were moot depriving the Court of subject matter jurisdiction to decide the matter (Court File No. 23). The parties filed initial memorandum and responses on the issue of mootness (Court File Nos. 27, 28, 29, 30).

## II. STANDARD OF REVIEW

The United States Court of Appeals for the Sixth Circuit recently laid out the principle of mootness as follows:

> A federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue. *Church of Scientology v. United States*, 506 U.S. 9, 12, 121 L. Ed. 2d 313, 113 S. Ct. 447 (1992). A case becomes moot "'when the issues presented are no longer 'live' or parties lack a legally cognizable interest in the outcome.'" *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 59 L. Ed. 2d 642, 99 S. Ct. 1379 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 23 L. Ed. 2d 491, 89 S. Ct. 1944 (1969)). In other words, a case becomes moot only when subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.*

*Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 530-31 (6th Cir. 2001). An inquiry into mootness must be made at every stage of the case and not solely at the time the complaint is filed. *United States v. City of Detroit*, 401 F.3d 448, 451 (6th Cir. 2005). If a case becomes moot, a court must dismiss the action because it is without authority to render a decision.

## III. ANALYSIS

The issue of mootness is a two part test. First, the alleged wrongful behavior must not reasonably be expected to recur. Second, events after the lawsuit was filed must have completely and irrevocably done away with the effects of any violation. Both factors must be present with respect to each of the awards granted by Hall. The Court will address each factor individually.

Any alleged injury in this case cannot reasonably be expected to recur because the Company plant in Chattanooga has ceased operations. Furthermore, the Company sold the property and the machinery inside the plant to a real estate company which plans to clean up and reuse the site for

"business, residential, and light commercial activities." (Court File No. 30, Ex. 2). Both the plant's closure and the sale of the property are documented in the *Chattanooga Times Free Press,* and the Court takes judicial notice of the facts pursuant to Fed. R. Evid. 201. All workers at the plant have been laid off and, as the plant has been sold to a third party, no violations of the bargaining contract can occur in the future. The Court finds the Company's alleged violations cannot be reasonably expected to recur because the Company no longer owns the plant and the third-party owner does not plan to reopen the plant or reinstate the collective bargaining agreement.

The Court must next determine if interim events have completely and irrevocably done away with the effects of any violations. The Company can no longer assign outside contractors to perform bargaining unit work because it no longer owns the site and the bargaining unit ceases to exist. Furthermore, Patterson cannot be reinstated to a truck-driving position because there is no truck-driving position for Patterson to which he could be restored. The only potential part of the award which could be in effect after the plant closing is any loss of pay or emoluments Patterson incurred when he was removed from his truck-driving position. Any money or benefits owed to Patterson would stop as of the day he was laid off at the plant and he cannot claim any injury extending beyond his termination.

The undisputed evidence before the Court when it ordered the parties to brief the issue of mootness was there was no reduction in pay or benefits when Patterson was transferred from the truck-driving position. However, the Union attached Patterson's affidavit to the Union's first memorandum regarding mootness stating "he was denied the opportunity to work overtime hours that he had previously been able to work." (Court File No. 28, p. 4). This assertion is not supported by the record and even if true, the Agreement specifically precludes an award of overtime in back

pay (Court File No. 12, Ex. 5). The initial grievance filed by the Union did not mention lost wages or back pay (Court File No. 12, Ex. 5). Furthermore, there was no evidence at the arbitration hearing of any loss of pay, earnings, or a reduction in hours (Court File No. 12, Exs. 3, 4). At the time of the arbitration hearing, Patterson was still employed at the plant earning what he would have earned if he still had his job as a truck driver (*id.*). In the Union's post- arbitration hearing brief, the requested relief did not deal with back pay. Furthermore, as Patterson's back pay is based on overtime, the Company argues it must be dismissed because the Agreement does not authorize an award of back pay beyond the forty-hour-work week.

The Agreement states "[n]othing included herein guarantees any employee any specific number of hours or days of work in any day or week." (Court File No. 12, Ex. 5). Furthermore, the Agreement provided the Company shall not be obligated to pay "for time not actually lost and back pay shall in no event be computed at more than forty (40) hours per week to which the employee may be entitled at his/her regular base rate." (*id.*). Therefore, under the terms of the Agreement, Patterson is not entitled to any back pay because he was not entitled to work more than forty hours a week. As he was "scheduled for an eight hour straight-time shift on weekdays," Patterson admits he worked full-time (Court File No. 28, Ex. 2). There is no issue of back pay because the issue was not raised before the arbitrator and the loss claimed is explicitly forbidden in the Agreement. As intervening events have completely and irrevocably done away with the effects of any violations, the issues before the Court are moot. As the Court "has no authority to render a decision upon moot questions," the case must be dismissed. *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992).

## IV. CONCLUSION

For the foregoing reasons, the Court will **DENY** the Company's Motion for Summary Judgment and the Union's Motion for Partial Summary Judgment and the Clerk will be ordered to **CLOSE** the case.

An Order Shall Enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**